**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**MARY A. SMITH,**
                **Plaintiff**

**v.**                                                     **Civil Action No.
3:04CV721-J**

**JO ANNE B. BARNHART, Commissioner
Social Security Administration,**
                **Defendant**

**MEMORANDUM OPINION**

This case presents plaintiff Mary Smith's challenge to the decision of the Commissioner denying her claim to Supplemental Security Income benefits. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

Ms. Smith filed her current application on June 28, 2002, alleging that she was unable to engage in any substantial gainful activity. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Smith's depression, post traumatic stress disorder, generalized anxiety disorder, borderline personality disorder, Raynaud's disease and history of substance abuse were severe impairments that prevented her from performing any of her past relevant work, but that she retained the residual functional capacity for a significant range of sedentary work.

If the Commissioner's decision is supported by substantial evidence, the reviewing

Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Ms. Smith contends that the decision is not supported by substantial evidence because of errors in the ALJ's evaluation of the opinion of plaintiff's treating physician. Dr. Hamad opined that Ms. Smith could stand and/or walk less than 2 hours in an 8-hour workday, and could sit less than 6 hours in an 8-hour workday. Tr. 280-281. Such limitations would preclude gainful employment.

It has long been established that the special position occupied by a treating physician calls for his or her opinion to be accorded great weight. While the ALJ is not bound by the opinions of a treating physician, he is required to set forth some basis for rejecting that opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). There is no error in declining to accept the unsupported conclusory statement of a physician, even a treating physician. Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988); Duncan v. Secretary, 801 F.2d 847 (6th Cir. 1986). While a treating physician's opinion is entitled to great weight, it is not dispositive regarding the ultimate issue of disability. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating

physician. <u>Wilson</u> also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

The ALJ found that "the objective record and Dr. Rim Hamad's own treatment records do not support the opinion that Ms. Smith cannot sustain a combination of sitting and standing to perform a limited range of sedentary work exertion for a full 8-hour workday." Tr. 22. Instead, the ALJ relied on the opinions of the State Medical Consultants that Ms. Smith could sit and/or stand for a full eight hour work day.

Examination of Dr. Hamad's report shows that the space for "medical/clinical findings" to support the conclusions is blank. Tr. 281. In support of the opinion that Ms. Smith should avoid temperature extremes and vibration, Dr. Hamad noted, "[Patient] has significant vascular disease insufficiency arthritis, carpal tunal syndrom. [Patient] is unable to work in my opinion." Tr. 282. Thus, even if it is assumed that the same reasoning is offered in support of the sit/stand limitations, the reasoning does not offer specific medical/clinical findings, or explicit limitations, but merely states diagnoses, leaving the ALJ to search elsewhere for the objective evidence to support those opinions. Even more significantly, the only condition identified that would affect Ms. Smith's ability to sit or stand for an eight hour day is arthritis.

In December of 2002, Ms. Smith presented with sharp stabbing pain in her back and neck. Dr. Hamad's exam revealed slightly decreased range of motion in the back. Straight leg raising was negative. Tr. 306. In March of 2003, Dr. Hamad recorded good radial and ulnar pulses and warm hands, but a positive Tinel's sign. She suspected "possible [illegible] or

pinched nerve from cervical arthritis." Tr. 284.  However, the cervical MRI showed only a mild cervical spondylolysis with a small posterior osteophyte complex at C5-C6.  Tr. 285.  The lumbar MRI showed some degenerative changes at L4-L5 and L5-S1, but, like the cervical MRI, it showed no abnormality in the foramina.  Tr. 287.

The State Medical Consultants opined that Ms. Smith could stand or walk six hours in an eight hour day and could sit for six hours in an eight hour day.  They also believed she was capable of light work; however, the ALJ rejected that portion of their opinions, concluding that she did not have the weight lifting capacity required for light work.  In carving out that portion of the opinions as unpersuasive, the ALJ did not reject the opinions wholesale, and their opinions regarding her standing and sitting ability were untouched.  Neither of the consultants had the MRI reports at the time of their evaluations, but, as noted, the reports showed no significant abnormality and would not add appreciably to the information available to the consultants.

Ms. Smith points to an April 2002 serology report that revealed the presence of antinuclear antibodies in a pattern possibly indicative of systemic lupus erythematosus or other connective tissue disease.  Tr. 225.  It is not clear how this relates to ability to sit or stand for a full day, and Dr. Hamad did not rely on it in offering her opinion.

Dr. Cohen of Southside Primary Care stated in June of 1999 that he had been Ms. Smith's primary care physician since 1995.  Tr. 191.  In August of 1999, Dr. Cohen stated that he treated Ms. Smith for Raynaud's Disease, and that "[s]he has difficulty working because this effects [sic] her hands."  Tr. 190.  However, Dr. Cohen's records also reflect that he advised her that she would have to stop smoking if the treatment was to work (Tr. 197), but she would not stop smoking  (Tr. 192).

The ALJ complied with applicable law by stating reasons for rejecting the largely unsupported report of the treating physician, and for accepting the opinions of the consulting physicians. Regardless of whether this Court would have reached a different conclusion, there was no legal error in the ALJ's handling of the treating physician's opinion.

An order in conformity has this day entered.